UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO.  1:25 CR-17 |
| | : | |
| Plaintiff, | : | JUDGE  J. BARRETT |
| | : | |
| vs. | : | INDICTMENT |
| | : | |
| FLIGHTTIME ENTERPRISES, INC., | : | 15 C.F.R. §§ 736.2(b)(1), 746.8(a)(1) |
| | : | & 764.2 |
| PAVEL IGLIN, | : | |
| | : | 18 U.S.C. § 554(a) |
| DANIELA FRIERY, and | : | |
| | : | 18 U.S.C. § 1956(h) |
| MARAT AYSIN, | : | |
| | : | 50 U.S.C. §§ 4819(a)(1) & (2)(A-G), |
| Defendants. | : | 4819(b) |
| | : | |
| | : | Forfeiture Allegation |
| | : | |

THE GRAND JURY CHARGES:

At all times relevant to this Indictment, unless otherwise indicated:

**THE DEFENDANTS**

1.     Defendant FLIGHTTIME ENTERPRISES, INC. ("FTE") is a company incorporated in the State of Nevada and registered to do business in the State of Ohio and the State of Florida. According to its website, FTE has experience in the supply of aircraft equipment and is a partner of more than 100 operators and customers worldwide. The website further states that FTE's "primary activities and focus is the implementation of comprehensive programs to supply aircraft engines, APUs [auxiliary power units], landing gears, wheels, and brakes, spare parts and organization of service maintenance and repairs of components and

assemblies for aircraft operators." FTE's website identifies office locations near West Chester, Ohio (in the Southern District of Ohio) and near Miami, Florida.

2.      FTE was originally established as a U.S. subsidiary or affiliate of a Russian aviation supply company ("Russian Affiliate"). According to the Russian Affiliate's publicly available website, the company "is among three major private suppliers in the market of Russian aviation spares, blocks and units and their maintenance." In and around 2019, the Russian Affiliate began using its name and the name FlightTime Enterprises interchangeably when conducting business. Some of the operations for FTE and its Russian Affiliate are conducted out of Russia with a separate Russian website that is different from the U.S.-based FTE's website. Employees often work for both FTE and the Russian Affiliate, and employees of the Russian Affiliate often work on FTE transactions.

3.      Defendant DANIELA FRIERY ("FRIERY") is a naturalized U.S. citizen and resident of the Southern District of Ohio. FRIERY is identified on FTE's website as the contact person for the West Chester, Ohio office of FTE.

4.      Defendant PAVEL IGLIN ("IGLIN") is a citizen of Russia who currently resides in the State of Florida pursuant to a non-immigrant visa. Corporate filings and social media websites identify IGLIN as a "Director," "Co-Founder" and/or "General Manager" of FTE.

5.      Defendant MARAT AYSIN ("AYSIN") is a legal permanent resident in the United States who formerly worked for FTE and currently resides in Florida.

## RELEVANT STATUTORY AND REGULATORY BACKGROUND

### A. The Export Control Reform Act and Export Administration Regulations

6.     The Export Control Reform Act ("ECRA"), 50 U.S.C. § 4801 *et seq.*, and the Export Administration Regulations ("EAR"), 15 C.F.R. Parts 730-774, restrict the export, reexport, and in-country transfer of items subject to the jurisdiction of the United States.

7.     Through the EAR, the U.S. Department of Commerce's ("USDOC") Bureau of Industry and Security ("BIS") reviews and controls the export of certain items from the United States to foreign destinations. See 15 C.F.R. Parts 734.2–734.3.  In particular, BIS has placed restrictions on the export and reexport of items that the BIS has determined could make a significant contribution to the military potential or nuclear proliferation of other nations or that could be detrimental to the foreign policy or national security of the United States.  Under the EAR, such restrictions depend on several factors, including the technical characteristics of the item, the destination country, the end-user, and the end-use.

8.     The EAR impose licensing and other requirements for items subject to the EAR to be lawfully exported from the United States or lawfully reexported from one foreign destination to another.

9.     The most sensitive items subject to EAR controls are identified on the Commerce Control List ("CCL"), which is set forth in Title 15, Code of Federal Regulations, Part 774, Supplement Number 1. Items on the CCL are categorized by an Export Control Classification Number ("ECCN"), each of which has export control requirements depending on the final destination, end use, and end user.

10.     On February 24, 2022, in response to Russia's further invasion of Ukraine, the USDOC imposed new license requirements on exports and reexports to Russia.  As of that date, any item classified under any ECCN in Categories 3 through 9 of the CCL requires a license to

3

be exported to Russia. 87 Fed. Reg. 12226 (Mar. 3, 2022). As of April 8, 2022, license requirements for exports to Russia were expanded to cover all items on the CCL. 87 Fed. Reg. 22130 (Apr. 14, 2022); 15 C.F.R. 746.8. Requests for licenses to export items on the CCL to Russia are reviewed under a policy of denial in all cases. 15 C.F.R. § 746.8(b).

11.     Under ECRA, it is a crime to willfully violate, attempt to violate, conspire to violate, or cause a violation of any regulation, order, license, or authorization issued pursuant to ECRA or the EAR. See 50 U.S.C. § 4819(a)(1), (b).

**B. Smuggling.**

12.     Section 305, Title 13 of the Code of Federal Regulations, provides that "[a]ny person who knowingly fails to file or knowingly submits false or misleading export information through the Shippers Export Declaration (SED) (or any successor document) or the Automated Export System (AES) shall be [guilty of a crime]."

13.     Similarly, 15 C.F.R. § 30.71 provides that "[a]ny person . . . who knowingly fails to file or knowingly submits, directly or indirectly, to the U.S. Government, false or misleading export information through the AES, shall be [guilty of a crime]."

14.     The Electronic Export Information ("EEI") (formerly known as the SED) is the required documentation submitted to the U.S. Government through the AES in connection with an export shipment from the United States. Exporters or their authorized agents are required to file accurate and truthful EEI for every export of goods from the United States with a value of $2,500 or more. An EEI also is required regardless of the value of the goods if the goods require an export license. 15 C.F.R. §§ 758.1, 30.2.

15.     A material part of the EEI and AES, as well as other export filings, is information concerning the end user and ultimate destination of the export. The identity of the end user may determine whether the goods: (a) may be exported without any specific authorization or license

from the U.S. Government; (b) may be exported with the specific authorization or license from the U.S. Government; or (c) may not be exported from the United States.

16.     The smuggling statute, 18 U.S.C. § 554, provides: "Whoever fraudulently or knowingly exports or sends from the United States, or attempts to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise, article or object, prior to exportation, knowing the same to be intended for exportation contrary to any law or regulation of the United States, shall be [guilty of a crime]."

17.     Because 13 U.S.C. § 305 and 15 C.F.R. § 30.71 are "law[s] or regulation[s] of the United States," violations of those provisions in connection with the fraudulent or knowing export, or receipt or facilitation of transportation prior to exportation, can serve as the basis for a violation of the smuggling statute, 18 U.S.C. § 554.

## OVERVIEW OF THE CRIMINAL SCHEMES

18.     According to Department of Commerce databases, FTE has exported over 2,700 shipments of aircraft parts valued at approximately $114,000,000 dating back to 2007.

19.     In the year prior to the imposition of the increased export restrictions against Russia on February 24, 2022, FTE was responsible for approximately 189 total shipments, including 120 identified and labeled as destined to Russia.

20.     Since the Russian export restrictions were imposed on February 24, 2022, FTE has continued to ship aviation parts and equipment to Russia and Russian end users, knowingly violating and evading those export restrictions by mislabeling shipments, providing false certifications, and using intermediary companies and countries to obfuscate the true end destination and end users.

5

21.     As employees and agents of FTE, defendants IGLIN, FRIERY, and AYSIN directed, assisted, and executed FTE's scheme to evade the Russian export restrictions with respect to the shipment of aviation parts and equipment.

22.     Examples of FTE's export control-evasion scheme are described in detail below.

**A. Export #1 - The Shipments of Receivers 1-3.**

23.     On or about February 28, 2022, days after the imposition of the additional export restrictions against Russia, FTE sent an email to FRIERY instructing FRIERY to urgently ship three specific aircraft receivers (hereinafter "Receivers 1-3") that FTE had in the U.S. FRIERY responded: "Because of the current situation, this is on hold for now… will see what we can do about all these orders."

24.     Months later, in or around July 2022, FTE employees discussed by email the subject of possibly shipping the same 3 receivers from FRIERY's warehouse in the U.S. to a Russian airline (Russian User 1). According to FTE emails, Russian User 1 was "begging" to have Receivers 1-3 shipped to them due to a serious shortage. FRIERY and IGLIN were both participants in this email exchange.

25.     Months later, in or around January 2023, employees at FTE again discussed the possibility of shipping the three receivers to Russia. FRIERY provided the receiver details and shipping options. On or about January 11, 2023, FTE instructed FRIERY to only ship Receivers 1 and 2 in one box. FRIERY was also instructed to attach pertinent documentation for all three receivers, which FRIERY did.

26.     On or about January 12, 2023, FRIERY provided the shipping size and weight for Receivers 1-2, along with an old packing list and the repair reports for all 3 receivers. In a follow-up email on or about January 12, 2023, an FTE employee directed FRIERY to remove all documents in which Russian User 1 was mentioned and to make sure there was no

6

documentation mentioning Russian User 1 anywhere on the package. The FTE employee reiterated that all such documentation must be removed and not sent with the cargo. On January 13, 2023, FRIERY responded that it was not a problem and did so.

27.      FRIERY created the draft shipping documents and invoice that listed a company in the United Arab Emirates ("Shipper 1") as the recipient of the aviation parts and equipment. The documents stated that the aviation parts and equipment would be in the care of another intermediary company purportedly based in South Korea ("Shipper 2"). FRIERY confirmed that the draft shipping documents (which omitted any reference to Russian User 1) looked acceptable. On or about January 29, 2023, FRIERY sent the final shipping documents for Receivers 1-2 with her signature. The total value for the shipment was $62,790.

28.      On or about January 31, 2023, FTE instructed FRIERY to urgently ship Receiver 3 under a separate booking from the shipment of Receivers 1-2 in order to avoid delay. FRIERY handled the shipping of Receiver 3 to Shipper 1, in accordance with the instructions referenced above.

29.      FTE and FRIERY then exported Receivers 1-3. FTE filed a corresponding EEI form that falsely identified Shipper 1 as the ultimate consignee and the UAE as the ultimate end destination, concealing the fact that aviation parts and equipment were destined for Russia User #1 in Russia.

30.      According to BIS, Receivers 1-3 are classified as ECCN 7A994 and required a BIS license to export to Russia at the time of shipment. However, no BIS license was applied for, or obtained, in connection with the shipment of Receivers 1-3.

**B.   Export #2 - Low-Pressure Turbine 1**.

31.      In or around January and February 2023, defendants FTE, FRIERY, and others orchestrated the purchase, sale, and shipment of a low-pressure turbine (hereinafter the "Low-

Pressure Turbine 1") from the United States to Russia without the requisite license. The value of the transaction was approximately $741,000. Records show that the item was shipped from the United States to Moscow, Russia through Dubai and the Maldives.

32.    FRIERY and FTE organized the contractual and shipping paths through both Shipper 1 and Shipper 2 in order to evade the export restrictions imposed on Russia and detection by law enforcement.

33.    FTE and FRIERY then exported Low-Pressure Turbine 1. FTE filed a corresponding EEI form that falsely identified Shipper 1 as the ultimate consignee and the UAE as the ultimate end destination, concealing the fact that aviation parts and equipment were destined for Russia.

34.    According to BIS, Low-Pressure Turbine 1 is classified as ECCN 9A991.d and required a BIS license to export to Russia at the time of shipment. However, no BIS license was applied for, or obtained, in connection with the shipment of Low-Pressure Turbine 1.

**C.  Export #3 – The APU Transaction.**

35.    Beginning in or around June 2022, FTE employees negotiated the purchase of an auxiliary power unit ("APU") called a GTCP131-9B from a U.S. supplier for $395,000. The U.S. supplier initially expressed hesitation about the transaction due to the "current world situation" and FTE's current ownership, meaning Russia.

36.    AYSIN told the supplier that FTE is a "US entity based in US and works within US territory… APU is required for our stock replenishment and will go to our West Chester facility." The U.S. supplier ultimately decided to move forward with the transaction. FRIERY arranged for shipment of the APU from the supplier to FTE's Ohio warehouse.

37.    The U.S. supplier required that FTE complete a form called a "Russia/Ukraine/Belarus Sanctions Certificate." Through the coordination of AYSIN, the form

8

was signed by IGLIN and dated July 25, 2022. The form falsely certified that the ordered product would not be exported to Russia.

38.     Through FRIERY, FTE created a purchase order whereby FTE sold the APU to Shipper 2 for $442,000.  On behalf of FTE, FRIERY prepared an End-User Statement for Shipper 2 to sign, promising among other things that the APU would not be exported to Russia. In fact, FTE, FRIERY, AYSIN, and IGLIN knew that the APU was being sold and exported to Russia. Specifically, through the coordination of FTE and its parent company, Aviahelp, the APU was sold to Russian User 2.

39.     FTE exported the APU.  A corresponding EEI form from FTE has not been identified.

40.     According to BIS, the APU described above is classified as ECCN 9A991.d and required a BIS license to export to Russia.  However, no BIS license was applied for, or obtained, in connection with the shipment of the APU.

**D.  Export #4 – Low-Pressure Turbine 2.**

41.     Beginning on or about June 1, 2022, FTE started negotiations with a Florida supplier to purchase a low-pressure turbine ("LPT") module (hereinafter the "Low-Pressure Turbine 2") that was being overhauled. AYSIN participated in the negotiations, which continued through in or around October 2022.  FRIERY, AYSIN, and IGLIN from FTE were involved in the discussions pertaining to the logistics of the transfer.

42.     With FRIERY's assistance, the LPT cargo was picked up from the vendor in Florida and shipped to an intermediary company in Armenia ("Shipper 3").  The invoice from FTE to the purported recipient in Armenia was for $838,005.27.   FTE reported on or about January 13, 2023 that the LPT module was successfully delivered to the "final destination" and passed inspection.  However, at the same time, employees of FTE, including FRIERY, AYSIN,

and IGLIN, knew that the LPT was being purchased for transport to Russia via Armenia using Shipper 3.

43.     FTE exported Low-Pressure Turbine 2 and filed a corresponding EEI form that falsely identified Shipper 3 as the ultimate consignee and Armenia as the ultimate end destination, concealing the fact that aviation parts and equipment were destined for Russia.

44.     According to BIS, Low-Pressure Turbine 2 is classified as ECCN 9A991 and required a BIS license to export to Russia at the time of shipment.  However, no BIS license was applied for, or obtained, in connection with the shipment of the Low-Pressure Turbine 2.

## COUNT ONE
### (Conspiracy to Violate ECRA)
### 50 U.S.C. § 4819

45.     The allegations set forth in paragraphs 1 through 44 of this Indictment are incorporated herein as if set forth in full.

46.     From in or about February 2022 and continuing to at least in or about October 2024, in the Southern District of Ohio and elsewhere, the defendants, FLIGHTTIME ENTERPRISES, INC., PAVEL IGLIN, DANIELA FRIERY, and MARAT AYSIN, together and with others known and unknown to the Grand Jury, did knowingly and willfully conspire to violate and cause one or more violations of the Export Control Reform Act (50 U.S.C. §§ 4801-4852), the Export Administration Regulations (15 C.F.R. Parts 770-774), and orders, licenses, and authorizations issued thereunder.

47.     The objects of the conspiracy were:

   a.  To acquire and obtain, on behalf of and for the benefit of Russian airline
       companies, export-controlled aircraft parts and components manufactured and
       sold in the United States;

b.  To conceal the prohibited export activities through various means – such as creating misleading invoices and purchase orders, asserting false end users in countries other than Russia, providing false sanctions compliance forms, and routing payment through bank accounts in countries other than Russia to conceal the source of the funds – to evade U.S. export laws and regulations and detection by law enforcement authorities;

c.  To deceive the United States government and to impair, impede, and obstruct the functions and operations of the BIS in the enforcement of export control laws and regulations administered by that agency so as to avoid penalties and disruption of the illegal activities; and

d.  To enrich members of the conspiracy through financial profit based on these illegal activities.

48.  It was a part and object of the conspiracy that the defendants, FLIGHTTIME ENTERPRISES, INC., PAVEL IGLIN, DANIELA FRIERY, and MARAT AYSIN, together with others, would and did agree to export and cause to be exported from the United States to Russia various aviation parts and equipment on the Commerce Control List set forth in Title 15, Code of Federal Regulations, part 774, Supplement No. 1, without first having obtained a license for such export from the U.S. Department of Commerce.

**All in violation of 50 U.S.C. Sections 4819(a)(1), 4819(a)(2)(A-G) and 4819(b); and 15 C.F.R. Sections 736.2(b)(1), 746.8(a)(1) and 764.2.**

**COUNT TWO**
**(Violation of ECRA – Export #1)**
**50 U.S.C. § 4819**

49.     The allegations set forth in paragraphs 1-44 of this Indictment are incorporated

herein as if set forth in full.

50.     From in or about February 28, 2022 and continuing to at least on or about January

31, 2023, in the Southern District of Ohio and elsewhere, the defendants, FLIGHTTIME

ENTERPRISES, INC., PAVEL IGLIN, and DANIELA FRIERY, and others known and

unknown to the Grand Jury, knowingly and willfully exported and caused to be exported, and

attempted to export and cause to be exported, from the United States to Russia various receivers

for aircraft on the Commerce Control List set forth in Title 15, Code of Federal Regulations, Part

774, Supplement Number 1, controlled under Export Control Classification Number 7A994,

without first having obtained a license for such export from the U.S. Department of Commerce,

and aided and abetted the same.

        **All in violation of 50 U.S.C. Sections 4819(a)(1), 4819(a)(2)(A-G) and 4819(b); and**
**15 C.F.R. Sections 736.2(b)(1), 746.8(a)(1) and 764.2, and 2.**

**COUNT THREE**
**(Violation of ECRA – Export #2)**
**50 U.S.C. § 4819**

51.     The allegations set forth in paragraphs 1-44 of this Indictment are incorporated

herein as if set forth in full.

52.     From in or about January 1, 2023 and continuing through at least on or about

February 6, 2023, in the Southern District of Ohio and elsewhere, the defendants, FLIGHTTIME

ENTERPRISES, INC., PAVEL IGLIN, and DANIELA FRIERY, and others known and

unknown to the Grand Jury, knowingly and willfully exported and caused to be exported, and

attempted to export and cause to be exported, from the United States to Russia a low-pressure

turbine for aircraft on the Commerce Control List set forth in Title 15, Code of Federal

Regulations, Part 774, Supplement Number 1, controlled under Export Control Classification

Number 9A991, without first having obtained a license for such export from the U.S.

Department of Commerce, and aided and abetted the same.

**All in violation of 50 U.S.C. Sections 4819(a)(1), 4819(a)(2)(A-G) and 4819(b); and 15 C.F.R. Sections 736.2(b)(1), 746.8(a)(1) and 764.2, and 2.**

## COUNT FOUR
### (Violation of ECRA – Export #3)
### 50 U.S.C. § 4819

53.    The allegations set forth in paragraphs 1-44 of this Indictment are incorporated

herein as if set forth in full.

54.    From in or about June 1, 2022 and continuing to at least in or about August 2022,

in the Southern District of Ohio and elsewhere, the defendants, FLIGHTTIME ENTERPRISES,

INC., PAVEL IGLIN, DANIELA FRIERY, and MARAT AYSIN, and others known and

unknown to the Grand Jury, knowingly and willfully exported and caused to be exported, and

attempted to export and cause to be exported, from the United States to Russia an auxiliary

power unit for aircraft on the Commerce Control List set forth in Title 15, Code of Federal

Regulations, Part 774, Supplement Number 1, controlled under Export Control Classification

Number 9A991, without first having obtained a license for such export from the U.S.

Department of Commerce, and aided and abetted the same.

**All in violation of 50 U.S.C. Sections 4819(a)(1), 4819(a)(2)(A-G) and 4819(b); and 15 C.F.R. Sections 736.2(b)(1), 746.8(a)(1) and 764.2, and 2.**

## COUNT FIVE
### (Violation of ECRA – Export #4)
### 50 U.S.C. § 4819

55.    The allegations set forth in paragraphs 1-44 of this Indictment are incorporated

herein as if set forth in full.

56.     From in or about June 1, 2022 and continuing to at least on or about January 13,

2023, in the Southern District of Ohio and elsewhere, the defendants, FLIGHTTIME

ENTERPRISES, INC., PAVEL IGLIN, DANIELA FRIERY, and MARAT AYSIN, and others

known and unknown to the Grand Jury, knowingly and willfully exported and caused to be

exported, and attempted to export and cause to be exported, from the United States to Russia a

low-pressure turbine for aircraft on the Commerce Control List set forth in Title 15, Code of

Federal Regulations, Part 774, Supplement Number 1, controlled under Export Control

Classification Number 9A991, without first having obtained a license for such export from the

U.S. Department of Commerce, and aided and abetted the same.

**All in violation of 50 U.S.C. Sections 4819(a)(1), 4819(a)(2)(A-G) and 4819(b); and
15 C.F.R. Sections 736.2(b)(1), 746.8(a)(1) and 764.2, and 2.**

## COUNT SIX
### (Conspiracy to Commit Smuggling)
### 18 U.S.C. § 371

57.     Paragraphs 1 through 1-44 are restated and re-alleged as if fully set forth herein.

58.     From in or about February 2022 and continuing to at least October 2024, in the

Southern District of Ohio and elsewhere, the defendants, FLIGHTTIME ENTERPRISES, INC.,

PAVEL IGLIN, DANIELA FRIERY, and MARAT AYSIN, together, and with others known

and unknown to the Grand Jury, did knowingly and willfully conspire to commit a federal

offense, specifically smuggling in violation of 18 U.S.C. § 554.

59.     In furtherance of the conspiracy and to achieve the objects and purposes thereof,

defendants FLIGHTTIME ENTERPRISES, INC., PAVEL IGLIN, DANIELA FRIERY, and

MARAT AYSIN, committed and caused to be committed the overt acts in pars. 23-29, 31-33,

35-38, and 41-42 of this Indictment, among others, in the Southern District of Ohio and

elsewhere.

14

**All in violation of Title 18, United States Code, Section 371.**

**COUNTS SEVEN TO TEN**
**(Smuggling – Exports #1-4)**
**18 U.S.C. § 554**

60.     The allegations set forth in paragraphs 1-42 of this Indictment are incorporated herein as if set forth in full.

61.     On or about the date ranges set forth below, and in relation to the specific aircraft equipment and transactions set forth below, in the Southern District of Ohio and elsewhere, the defendants identified below, together with others, did fraudulently and knowingly export and send from the United States merchandise, articles, and objects contrary to U.S. laws and regulations (including without limitation 50 U.S.C. §§ 4801-4852, 15 C.F.R. Parts 730-774, 13 U.S.C. § 305, and 15 C.F.R. Part 30), and did fraudulently receive, conceal and facilitate the transportation and concealment of such merchandise, articles and objects, prior to exportation, knowing the same to be intended for exportation, contrary to such U.S. laws and regulations, to wit:

| Count | Item | Defendants | Dates |
|---|---|---|---|
| Count 7 | Export 1 | FTE, FRIERY, & IGLIN | Feb. 28, 2022 – Jan. 31, 2023 |
| Count 8 | Export 2 | FTE, FRIERY, & IGLIN | Jan. 1, 2023 – Feb. 6, 2023 |
| Count 9 | Export 3 | FTE, FRIERY, IGLIN & AYSIN | June 1, 2022 – Aug. 2022 |
| Count 10 | Export 4 | FTE, FRIERY, IGLIN & AYSIN | June 1, 2022 – Jan. 13, 2023 |

**All in violation of Title 18, United States Code, §§ 554(a), and 2.**

**COUNT ELEVEN**
**(Conspiracy to Launder Monetary Instruments)**
**18 U.S.C. § 1956(h)**

62.     From on or about March 2022 through October 2024, in the Southern District of

15

Ohio and elsewhere, the defendants FLIGHTTIME ENTERPRISES, INC., PAVEL IGLIN, DANIELA FRIERY, and MARAT AYSIN, did knowingly combine, conspire, and agree with each other and with other persons known and unknown to the Grand Jury to commit offenses against the United States in violation of Title 18, United States Code, Section 1956 and Section 1957, to wit:

    a.  to knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is, smuggling, with the intent to promote the carrying on of such specified unlawful activity, and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i); and

    b.  to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, smuggling or export control violations involving an item controlled under the EAR, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

    c.  to transport, transmit and transfer and attempt to transport, transmit and transfer a monetary instrument and funds from a place in the United States to and through a

place outside the United States with the intent to promote the carrying on of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(2)(A); and

d.  to knowingly engage and attempt to engage, in monetary transactions by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, smuggling or export control violations involving an item controlled under the EAR, in violation of Title 18, United States Code, Section 1957.

**All in violation of Title 18, United States Code, Section 1956(h).**

### FORFEITURE ALLEGATION ONE

Upon conviction of one or more of the offenses set forth in Counts One through Five of this Indictment, the defendants, FLIGHTTIME ENTERPRISES, INC., PAVEL IGLIN, DANIELA FRIERY, and MARAT AYSIN, shall forfeit to the United States, pursuant to 50 U.S.C. § 4819(d)(1), any property: (A) used or intended to be used, in any manner, to commit or facilitate the violation(s); (B) constituting or traceable to the gross proceeds taken, obtained, or retained, in connection with or as a result of the violation(s); and (C) constituting an item or technology that is exported or intended to be exported in violation of Title 50, United States Code, Chapter 58, Subchapter I including, but not limited to, a money judgment in the amount of the gross proceeds the defendants obtained or retained as a result of the violation(s).

### FORFEITURE ALLEGATION TWO

Upon conviction of one or more of the offenses set forth in Counts Six through Ten of this Indictment, the defendants, FLIGHTTIME ENTERPRISES, INC., PAVEL IGLIN, DANIELA FRIERY, and MARAT AYSIN, shall forfeit to the United States, pursuant to 18

U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violation(s) including, but not limited to, a money judgment in the amount of the proceeds the defendants obtained as a result of the violation(s).

## FORFEITURE ALLEGATION THREE

Upon conviction of the offense set forth in Count Eleven of this Indictment, the defendants, FLIGHTTIME ENTERPRISES, INC., PAVEL IGLIN, DANIELA FRIERY, and MARAT AYSIN, shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offense, and any property traceable to such property including, but not limited to, a money judgment in the amount of the proceeds involved in the offense.

## SUBSTITUTE ASSETS

If any of the property described above, as a result of any act or omission of the defendants:

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred or sold to, or deposited with, a third party;

c.  has been placed beyond the jurisdiction of the court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 50 U.S.C. § 4819(d)(2), 18 U.S.C. § 982(b)(1), or 28 U.S.C. § 2461(c), to seek forfeiture of any other

property of the defendants, up to the value of the property described above.

**A TRUE BILL**

/s/

**GRAND JURY FOREPERSON**

**KENNETH L. PARKER**
**UNITED STATES ATTORNEY**

**TIMOTHY S. MANGAN**
**ASSISTANT UNITED STATES ATTORNEY**

19

